USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-21-08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ROSE McCORMICK,

        Plaintiff,

        -v-

ALPHONSO R. JACKSON, Secretary of U.S.
Department of Housing and Urban
Development,

        Defendant.
------------------------------------X

07 Civ. 7893 (JSR)

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

    On April 29, 2008 the Honorable Kevin N. Fox, United States Magistrate Judge, issued a Report and Recommendation (the "Report") on defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 8, 12(b)(1) and 12(b)(6), and 28 U.S.C. § 1915(e)(2)(B). The Report recommends striking non-essential and redundant portions of the Complaint, but otherwise denying the motion to dismiss. Both parties timely objected to the Report, and consequently, the Court has reviewed the motion and the underlying record de novo.

    The plaintiff, Rose McCormick, is a former employee of the Department of Housing and Urban Development ("HUD"). Her Complaint consists of (a) allegations set forth in the 5-page preprinted form frequently used by pro se employment discrimination litigants in this District, (b) an additional 38 pages of allegations, and (c) over 900 pages of attached documentation. On its face, the Complaint borders on the

incomprehensible and may well fail to state any claim in any cognizable fashion. However, the Court will assume, <u>arguendo</u>, that, as Magistrate Judge Fox found, the gravamen of the Complaint is a claim for retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e <u>et seq.</u> In particular, at page 15 of the 38-page second portion of her Complaint, McCormick alleges that after she filed in April 2002 a complaint with HUD Regional Director Marisol Morales in which McCormick claimed that she had suffered "abusive, bias[ed], and discrimin[atory]" treatment at the hands of her first supervisor at HUD, she experienced acts of retaliatory discipline and general harassment that led to her constructive discharge. Viewing the Complaint most liberally in favor of plaintiff, it would appear that it is alleged that this retaliatory treatment took two forms: first, the secret videotaping and widespread distribution, by a vast conspiracy of federal employees, of an alleged sexual assault on plaintiff by a HUD employee; and second, certain discrete disciplinary actions.

As to the first, 28 U.S.C. § 1915(e)(2)(B)(i) permits a court to dismiss the action of a litigant proceeding <u>in forma pauperis</u> at any time if the court determines that the action is "frivolous or malicious." An action is "frivolous" if, among other things, "the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy,"

Livingston v. Adirondack Bev. Co., 141 F.3d 434, 437 (2d Cir. 1998), or the facts alleged "rise to the level of the irrational or the wholly incredible," Denton v. Hernandez, 504 U.S. 25, 33 (1992). McCormick's allegations as to the videotape-related conspiracy clearly fit these descriptions. According to the Complaint, after McCormick filed her HUD complaint with Ms. Morales, McCormick's supervisors enlisted another HUD employee, Lawrence Hirsch, to sexually assault McCormick, and, while doing so, to videotape the assault using "a RING embedded with a camera lens worn on his middle finger that I never saw and metal disguised PINS embedded with a pinhole camera lens attached to his H[UD] lanyard worn around his neck." See the 38-page second section of the Complaint, at 15. Further, according to the Complaint, these pinhole cameras transmitted video images to a "remote receiver" manned by Hirsch's friend, who then, along with numerous other HUD employees, reproduced 12,000 copies of the footage, which was then shown in HUD training and conference rooms and sold or otherwise distributed by Hirsch and other HUD employees to "County employees, to County Courthouse employees, at County homes, in the Irish neighborhoods, at the Airport, to seventeen year old boys, [and] in the Lobby of the Federal Plaza Building." See generally id. at 15-31. Further still, according to the Complaint, upwards of forty identified and countless unidentified employees of HUD, the Office of the Inspector

3

General, and the Office of the United States Attorney for the Southern District of New York conspired to prevent or obstruct McCormick from learning the truth about the videotapes. See generally id.

As this description makes plain, McCormick's allegations with respect to the videotape conspiracy are, on their face, "irrational," "wholly incredible," and "the product of delusion or fantasy." See Denton, 504 U.S. at 33; Livingston, 141 F.3d at 437. Accordingly, the Court dismisses them under 28 U.S.C. § 1915(e)(2)(B)(i).[1]

As to the second category, McCormick's allegations that her employer also retaliated against her by way of discrete disciplinary actions suffer from a different defect: they fail to allege any adverse incident sufficiently proximate to McCormick's filing of her HUD complaint to give rise to an inference of causality. The Supreme Court has held that the "temporal proximity between an employer's knowledge of protected activity and an adverse employment action" must be "very close" in order to serve, without more, as "sufficient evidence of causality to establish a prima facie case" of retaliation. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (internal quotation

---

[1] Other courts in this Circuit have dismissed similarly fantastical claims. See, e.g., Mecca v. United States, 2006 U.S. Dist. LEXIS 77508 (E.D.N.Y. Oct. 4, 2006) (dismissing claims as "fantastic and delusional"); McCracken v. Fass, 2006 U.S. Dist. LEXIS 77513 (E.D.N.Y. Oct. 10, 2006) (same).

4

marks omitted).  While there is no bright-line test for how much time is "very close," the overwhelming majority of cases limit such time to less than six months, if not shorter.  See Malacarne v. City Univ. of N.Y., 2008 U.S. App. LEXIS 17059 (2d Cir. N.Y. Aug. 8, 2008) ("[T]he six month gap between plaintiff's alleged complaint and her poor performance evaluation is insufficient to fulfill her burden of demonstrating a pretext."); Nonnenmann v. City of New York, 2004 U.S. Dist. LEXIS 8966, at *75-78 (S.D.N.Y. 2004) (Peck, M.J.) (surveying numerous cases and concluding that four months is too long a time period to raise, without more, an inference of causality).  Here, McCormick filed the HUD complaint in April 2002, but, for all the prolixity of her Complaint the earliest disciplinary action she alleges is a "written Reprimand" by Rochelle Printz issued a year-and-a-half later, in September 2003; and the other adverse events she claims were retaliatory occurred in the Spring of 2004 and December, 2004.  See the 38-page second section of the Complaint, at 16-17, 28-29, 33.[2]  In the absence of other bases for referring causality, none of the allegedly adverse actions was close enough in time to the protected conduct to make out a prima facie case of retaliation.

---

[2] As to the other adverse events, McCormick alleges, for example, that on December 21, 2004, Deborah VanAmerongen threatened disciplinary action and removal via email, id. at 17; and that on January 18, 2005, Yvette Lugo served a Notice of Proposed Suspension, which was followed by a hearing on February 1, 2005, id. at 17, 28-29.

5

Indeed, even "a liberal reading of the complaint gives [no] indication that a valid claim might be stated." McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004).

Accordingly, for the foregoing reasons, the Court grants defendant's motion to dismiss in its entirety. Clerk to enter judgment.

Dated:   New York, New York              JED S. RAKOFF, U.S.D.J.
         August 20, 2008